# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **ROBIN HILL** | : | |
| 1629 Oakwood Ave. | : | |
| Akron, OH 44301 | : | |
| | : | |
| *Plaintiff*, | : | CASE NO.  5:20-cv-1428 |
| | : | |
| v. | : | JUDGE |
| | : | |
| | : | MAGISTRATE JUDGE |
| **BABCOCK & WILCOX** | : | |
| c/o Statutory Agent: | : | |
| CT Corporation System | : | |
| 4400 Easton Commons Way, Suite 125 | : | **Jury Demand Endorsed Herein** |
| Columbus, OH 43219 | : | |
| | : | |
| *Defendant*. | : | |

## COMPLAINT

NOW COMES Plaintiff Robin Hill ("Plaintiff") and proffers this Complaint for damages against Defendant Babcock & Wilcox ("Defendant").

## THE PARTIES

1. Plaintiff is a natural person residing in Summit County, Ohio.

2. Defendant Babcock & Wilcox is a foreign corporation doing business in the Northern District of Ohio.

3. At all relevant times, Plaintiff was an "eligible employee" as defined by the Family Medical Leave Act, 29 U.S.C. § 2611(2), the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. §12101, *et seq*. ("ADA"), and by O.R.C. Chapter 4112.

1

4. Defendant is an "employer" as defined by the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. §12101, *et seq*. ("ADA"), 29 U.S.C. § 2611(4)(A), and by O.R.C. Chapter 4112.

5. At all times relevant herein, Defendant was engaged in commerce or an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar workweeks at all times during Plaintiff's employment.

6. Plaintiff has complied with all jurisdictional requirements and has attached her EEOC Right to Sue as Exhibit A.

## JURISDICTION AND VENUE

7. All counts contained herein are brought pursuant to the laws of the United States, therefore this Court has jurisdiction pursuant to 28 U.S.C. §1331.

8. This action is brought pursuant to the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq*., the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. §12101, *et seq*., ("ADA") and the Ohio Laws of Discrimination, R.C. Chapter 4112 ("Chapter 4112").  This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. §1367 as this Complaint raises claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

9. Venue is proper pursuant to 28 U.S.C. §1391, because all the events in question took place in the Northern District of Ohio.

**FACTUAL BACKGROUND**

10. Plaintiff was hired by Defendant as an Accounts Payable Clerk in 2016. She was promoted to Order Administrator in May 2019, and she remained in that position until her termination in January 2020.

11. Plaintiff's job duties included, but were not limited to, communicating with buyers regarding shipment, shortages, and latencies.

12. Plaintiff's employment was devoid of any serious disciplinary or performance issues until she was hospitalized in November 2019.

13. Plaintiff left work on or about November 18, 2019 and went straight to the emergency room with chest pains. She was admitted to the hospital and remained hospitalized for one week because her blood pressure was dangerously high.

14. Initially, Plaintiff's physicians thought Plaintiff had a stroke or an aneurysm, so during this time Plaintiff underwent intensive diagnostic testing and worked with a neurologist.

15. Plaintiff communicated her hospitalization with management via email and her buyers via text message. These messages indicate that both Defendant's management and buyers were aware that Plaintiff was in the hospital.

16. On or about November 19, 2019, Plaintiff told Brian Allio, Supply Chain Purchasing Manager, that she would return to work on or about Tuesday November 26.

17. Mr. Allio suggested that Plaintiff should use sick time plus one vacation day to avoid qualifying for Short Term Disability, which goes into effect after taking 7 calendar days off for illness.

18. Plaintiff complied with Mr. Allio's suggestion and used one vacation day to avoid qualifying for STD. She returned to work on or about November 26, 2019, and worked normally through the holidays.

19. Between November 28, 2019 and January 10, 2020, Defendant's employees were off work for regular holidays, including Thanksgiving, Christmas, and the New Year holidays.

20. This time included a company-wide holiday shutdown from December 20, 2019 to January 2, 2020.

21. On or about January 14, 2020, Mr. Allio abruptly placed Plaintiff on a Performance Improvement Plan (PIP), despite the fact that she had been off work for medical reasons and because of the holiday season.

22. Plaintiff did not receive any negative performance reviews or any other verbal or written warnings prior to being placed on a PIP.

23. Items in the PIP included communication with the team and management, expediting orders, supporting buyers, and professional business communication.

24. Item #4 of the "immediate and sustained improvement" section of the PIP is direct evidence of perceived disability/disability discrimination. It refers to a lack of communication and asked for "no surprises" from Plaintiff.

25. This referred to Plaintiff's absences related to her illness and diagnosis because it states, "communicate to the team and managers of out of office needs." Plaintiff's "out of office needs" include being hospitalized for a serious medical condition.

26. It is well-documented that Plaintiff communicated both to buyers and management each time she called in sick.

4

27. On or about January 15, 2020, Plaintiff was off work again for high blood pressure. She notified management and her buyers through text message.

28. On or about January 22, Plaintiff received an email from Mr. Allio as a follow up to her PIP. The email was positive with no indication that Plaintiff's employment was in jeopardy.

29. In this email, Mr. Allio attached the company's FMLA policy just in case Plaintiff wanted to use the "resources available" to her.

30. Although Mr. Allio sent Plaintiff FMLA documents, he encouraged her to use vacation time for her illness again.

31. Plaintiff intended to apply for FMLA leave, but Defendant terminated her before she was able to submit the paperwork.

32. On or about January 28, 2020, Defendant terminated Plaintiff for not meeting the requirements outlined in her PIP.

33. Plaintiff was not given a chance to improve any alleged work performance issues despite the 30-day timeline outlined in the PIP.

34. Plaintiff worked five business days between the date she was placed on the PIP and the date of her termination.

35. Defendant terminated Plaintiff within one week after presenting her with the option to use FMLA leave for her medical condition, preventing her from utilizing her rights under the FMLA.

36. Defendant presumed that Plaintiff would be unable to perform the essential functions of her position because of her ongoing medical condition.

37. Defendant encouraged Plaintiff to use vacation time to avoid qualifying for STD.

38. Defendant terminated Plaintiff based on her disability/perceived disability.

39. Defendant cannot articulate a legitimate, non-discriminatory reason for Plaintiff's termination.

40. The reasons offered for Plaintiff's termination are pretextual.

## COUNT I
### Disability Discrimination – R.C. §4112.02

41. Plaintiff reasserts and reincorporates each and every allegation contained in the paragraphs above as if fully rewritten herein.

42. At all times material herein, Plaintiff was regarded as having a physical impairment within the meaning of Section 4112.01(A)(16) of the Ohio Revised Code.

43. At all times material herein, Plaintiff was a qualified individual with a disability within the meaning of R.C. §4112.01(A)(13) of the Ohio Revised Code.

44. Defendant knew Plaintiff was disabled or regarded her as disabled.

45. Defendant was aware of the difficulties suffered by Plaintiff as a result of her disability because it knew Plaintiff was undergoing diagnostic treatment for dangerously high blood pressure and knew she was hospitalized.

46. Defendant discriminated against Plaintiff because of her disability by taking the following non-exhaustive list of actions: terminating her, encouraging her to use vacation time instead of sick time, discouraging her from qualifying for short term disability leave, placing her on a PIP, and/or by otherwise discriminating against her in the terms, privileges and conditions of employment.

47. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

48. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT II
### Disability Discrimination - Americans with Disabilities Act

49. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

50. This claim is brought under federal law, pursuant to 42 U.S.C. § 12101, *et seq.*, and as defined in 42 U.S.C. § 12101.

51. Plaintiff is an otherwise qualified individual.

52. Plaintiff was disabled or perceived to be disabled, as she was undergoing diagnostic treatment for a medical condition at the time of her termination.

53. Plaintiff indicated to Defendant that she had a medical condition and required ongoing medical treatment.

54. Defendant perceived Plaintiff to be disabled.

55. Plaintiff suffered an adverse employment action when she was abruptly placed on a PIP and terminated after being hospitalized and taking time off for her hospitalizations and diagnostic appointments.

56. Defendant discriminated against Plaintiff because of her disability by taking the following non-exhaustive list of actions: terminating her, placing her on a PIP,

discouraging her for using STD or FMLA, creating false reasons for her termination, and/or by otherwise discriminating against her in the terms, privileges and conditions of employment.

57. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

58. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT III
### Interference – Violation of the Family Medical Leave Act

59. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

60. Plaintiff was eligible for FMLA leave at the time of her termination.

61. Plaintiff was entitled to FMLA leave, as she suffers from a serious medical condition.

62. Defendant was notified that Plaintiff suffered from a serious medical condition that qualified her for FMLA leave.

63. Defendant presented Plaintiff with "resources" she could use for her medical condition, which included Defendant's FMLA policy and application.

64. Defendant discouraged Plaintiff from exercising her rights under the FMLA and encouraged her to use vacation days instead of job-protected leave.

65. Defendant interfered with Plaintiff's FMLA rights by instructing her not

to use FMLA for her serious medical condition and by terminating her before she could exercise her rights under the FMLA.

66. Defendant lacked good faith and/or reasonable grounds to believe it had not violated the FMLA in its discharge of Plaintiff.

67. Defendant's violations of the Family and Medical Leave Act entitles Plaintiff, pursuant to 29 U.S.C. § 2617(a), to monetary damages which include back pay and benefits, statutory liquidated damages, and attorneys' fees and costs of bringing this litigation, in an amount to be determined at trial.

WHEREFORE, Plaintiff demands:

For all Counts, monetary damages including back pay and benefits, statutory liquidated damages, expert witness fees and attorneys' fees and costs, and front pay, compensatory damages and punitive damages in an amount to be determined at trial, but in any event not less than $75,000.00 and any and all other relief, which the Court deems just and appropriate.

Respectfully submitted,

/s/ *Rachel A. Sabo Friedmann*
Rachel A. Sabo Friedmann (0089226)
(*Rachel@thefriedmannfirm.com*)
Peter G. Friedmann (0089293)
(*Pete@thefriedmannfirm.com*)
**The Friedmann Firm LLC**
1457 S. High Street
Columbus, OH 43207
614-610-9757 (Phone)
614-737-9812 (Fax)

*Attorneys for Plaintiff*

## **JURY DEMAND**

Plaintiff hereby requests a jury of at least eight (8) persons.

/s/ *Rachel A. Sabo Friedmann*
Rachel A. Sabo Friedmann (0089226)